Chancellor Rutledge
delivered the judgment of the Court as follows: — The first point is whether the Captain is an agent for the consignee, and delivery to him such an actual delivery to the consignee as divests the consignor *281 af all property in the goods, and of the right to stop them in transitu, on the bankruptcy of the consignee, and thereby making the goods liable to the attachments issued by the general creditors of the bankrupt? In the opinion of the court, the Captain can by no means be considered as the agent of the consignee, and delivery to him actual delivery to the consignee. If he was there never coidd a case happen, whePe the consignor could retake the property in transitu. The Captain like a common earner undertakes for the safe keeping and transporting of goods committed to his custody, and to deliver them to the order of the consignor, or such person as may he named in the bill of lading. He acquires a special property, to support his possession and to enable him to perform his contract to deliver. But as to the allegation that the Captain (MTver) was in this case the special agent of Howell, there is no foundation for it. The bills of lading are in the usual form; to deliver one parcel of wine to the agent of Howell in Charleston, and another parcel to himself in London. MTver being appointed to the command of the vessel by Howell does not vary the case, lie stands on the same ground as a carrier, with any other commander of a vessel, unless some written authority be shewn proving him to have been a special agent of Howell,
Vendor has a right to stop goods in transitu, where there has not been an actual delivery to the bankrupt.
3 Durnf. &. ii 466.
In 1F84,
In all the cases decided, the court of law has made a very proper distinction between an actual and a constructive delivery to the vendee in order to support the right of the consignor to stop the goods in transitu.
In the case of Stokes vs. La Riviere, a person living at Lisle, sent an order to the plaintiff for goods to be consigned to him. They were sent by the particular conveyance mentioned in tbe instructions, by way of Ostend; at which place and before they got into the possession of the consignee, they were attached by the defendant for a debt due him by the consignee, but not until after tlie plaintiff bad heard of the insolvency of the consignee, and had countermanded the delivery. Lord Mansfield held that tiio constructive possession of the consignee, to whose special agent the goods had been delivered for the purpose *282 of being transmitted to him, was not to be regarded, hut that there must he an actual delivery to the consignee himself. So here the goods being stopped while they were in transitu, and before the vendee had actually taken possession, the vendors were competent to countermand the delivery in the event which had happened; and certainly the goods must be considered in transitu, until they arrive at the ultimate place of delivery, which did not happen here. This case is exactly similar to that before us.
3 Durnf. & E.
In 1785.
3 Durnf. & E.
Rwi/89.
The case of the lessee of Blanchard vs. Beal, is still stronger to shew the necessity of an actual possession by the bankrupt, in contradistinction to a constructive possession, by the intervention of an agent. Per lord Mansfield. « Though goods may be considered as delivered to the vendee for many purposes, yet as for this purpose there must be an absolute and actual possession by the bankrupt, otherwise they may be stopped in transitu. A delivery to a third person to convey is not sufficient.” These authorities have been cited in subsequent cases, and recognized in the court of King’s Bench by the present judges of that court.
in Ellis vs. Hunt and others, assignees of Moore, which was an action of travel* for a quantity of files, the case was as follows: — The goods had been carried to the place of destination, and the consignee being a bankrupt, liis assignees had put their mark upon them, but had not removed them. The consignor some days after countermanded the delivery; and the question was, whether there was such an actual delivery and possession by the consignee or his assignees, as would debar the consignor of his right to stop the goods in transitu, and it was determined that he had lost the right. I quote this case principally on account of the following circumstance in it: The goods were brought to the Falcon Inn on the 22d November: Immediately on their arrival in town they were attached,by the creditors of the bankrupt: On the 15th a docket was struck, and on the 18th a commission of bankruptcy issued against him: On the 24th a provisional assignment was executed by the commissioners to John *283 Wills, who (lcmaiulod the goods, and on the same day put his mark on the cask, but did not remove it. The at-taclimcnt was witiidrawn, but the case does not mention on what principle. 1 suppose it must have been because he had been declared a bankrupt on the 18th, four days before, and all his right had been assigned to the commissioners previous thereto. B uller J.
2 ». & ja 674.
1,1 ir8‘'
In all the cases that have been decided on this subject, the line has been precisely drawn; and they all tu&i on the question, whether there lias been an actual delivery to the bankrupt. It is of the utmost importance to adhere to the line for if we break through it, we shall endanger the authority of the cases already decided. There may he cases where as between buyer and seller, if no bankruptcy happen, the goods are considered as in the possession of the buyer, the instant they go out of the possession of the vendor. As if A. order goods to be sent by a particular carrier at his own risk; delivery to the carrier is delivery to A. to every other purpose. But if he becomes insolvent or bankrupt, before the carrier actually delivers them to him, the vendor might seize them; because it is only a constructive delivery to the vendee. An actual delivery is necessary to divest the vendor’s right to stop the goods in transitu. It is a right founded on equitable, principles, originally established by the courts of equity» and since adopted by the courts of law. But to avail himself of it, the vendor must stop the goods before they get into the actual possession of the vendee.
Solomons vs. -. One Hague bought a quantity of lead from the defendant at Liverpool, and ordered it to be shipped to Rouen in France. It was accordingly shipped from Chester by the defendant, and bills of lading were endorsed and sent to Hague. The plaintiff afterwards gave Hague acceptances lor TOOL and Hague delivered him the bills of lading as a security. The ves sel sailed, but was forced back by stress of weather to Chester. Hague having become bankrupt, and the defendant not having received the price of his goods, stopped them, while they were on board of the ship in England, and took them away. The plaintiff demanded the *284 lead, which was refused to be delivered, and an action was thereupon brought. The acceptances had not been paid.
■; d. & e. 70-
1787.
•¿790.
Lord Kenyon. This is a harsh demand against the defendant, who it is confessed has not received the value 0f the goods in question. The first case on this subject is Toilet’s assignees vs. Prescott. That has never been imPcac^ic<t the smallest degree; on the contrary it has always been mentioned by the court with approbation. As between vendor and vendee, where the price is not paid the former has a right to stop the goods in transitu in case of bankruptcy of the latter.
In Lichbarrow vs. Mason in the Court of King’s Bench, Ashurst said; where the delivery is to be at a distant place, as between vendor and vendee, the contract is ambulatory until delivery; and therefore in case of tlm insolvency of the vendee in the mean time, the vendor may stop the goods in transitu.
The same case was afterwards removed by writ of error into the Exchequer Chamber, where lord Lough-borough in delivering the opinion of the court said, that the sale is not executed before delivery, and in the simplicity of former times, a delivery into the actual possession of the vendee or his servant was always supposed. In the variety and extent of dealing, the delivery may be presumed from circumstances, so as to vest a property in the vendee. A destination of goods by the vendor to the use of the vendee, marking them, removing them for the purpose of being delivered, may all entitle the vendee to act as owner, to assign, and to bring an action against a third person, to whose hands they may have come. But the title of the vendor is never entirely divested, until the goods have come into the possession of the vendee. He has therefore a complete right for just cause to retract the intended delivery, and to stop the goods in transitu. The cases determined in the courts of law have confirmed this doctrine.
The case of Bowering vs. Veruler, called the Dutch, case, proves, that the consignor does not part with all his right on shipping goods. For in this case the consignor hearing of the insolvency of the consignee, after the goods *285 had been shipped, but before the ship had sailed, summoned the ship master before the court at Amsterdam, who ordered him to sign other bills of lading to the order of Vender, notwithstanding he had signed bills to deliver to Bowering or order. II. Blackstone 364.
1 Atk. 243.
The case of the assignees of Toilet vs. Prescott is the first that was determined on this subject; all subsequent determinations have been bottomed on the authority of that case; and they all uniformly agree, as between the consignor and consignee, in supporting the right of the owner unpaid, to stop the goods in transitu. And in the case last mentioned lord Hardwickc went further, and decreed in favor of the consignor in the first instance, against the indorsee of the bill of lading without notice; and said he could not see the reason, why the principal should not have his goods again, unless it was because his being in possession of the bills of lading might have gained the bankrupt a credit.
I take no notice of the cases relative to principal and factors, because, they do not immediately apply; and the case of Wiseman vs. Vandeput is no otherwise applicable than to shew, that it is allowable in equity for the consignor to take any means short of force or violence to regain possession of the goods, before they com¿ to the hands of the bankrupt or his assignees.
It is observable that from the determination in tlic case of the assignees of Toilet vs. Prescott, to that of Mason vs. Lichbarrow in the Exchequer Chamber, there is hut one similar to tuis; that is the case of Stokes vs,. La Riviere.
The cases are all between either consignor and consignee, assignees of the bankrupt and consignor, or indor-sees of consignee and consignor. This is a case between the creditors of a bankrupt attaching goods not paid for, which were consigned to the bankrupt subsequent to his becoming so; the consignor in a foreign country, ignorant of the situation of his consignee; which goods were never actually delivered to, or in the possession of the bankrupt, who indeed had absconded, and his bankruptcy been docketted previous to the signing of the bills of ladings
*286 The whole train of adjudications concur in the following points: That nothing short of actual delivery and possession of goods hy the consignee, will divest the consignor of his legal right to stop them in transitu: That the contract is ambulatory as between the vendor and vendee, where the goods are to be delivered at a distant place, until delivery; and that in case of the vendee’s insolvency in the meantime, they may be stopped by the vendor in transitu; and lastly that they must be considered in transitu until they arrive at the ultimate place of delivery.
It is not contended that Howell ever assigned the bills of lading, or that he ever had possession of them, or of the invoices; indeed it was impossible that he could have them, as he had absconded, and his bankruptcy was dock-etted before the bills were signed.
It is a leading maxim in courts of equity that he who seeks equity must first do equity; and it is certainly much more consonant to equity and justice, that the consignor of the goods, which were unpaid for, should be allowed to retain them, if he can by any means get possession before they are delivered; than that old creditors who never trusted on the faith of those goods, should get an undue preference, and have their whole debts paid in the first place, and leave the consignor to come in as a creditor for a shilling in the pound, notwithstanding he has the goods in his own custody, and a specific lien on them. Where the equity is equal between the parties, the legal title must prevail. Now according to the foregoing cases, Shoolbred and others, (acting for the owners of the wine) having never been entix’ely divested of their legal title, the goods not having been actually delivered, nor in the possession of Howell, and having a right to stop them in transitu, obtained the bills of lading and invoice and possession of the goods by their agent as far as was practicable, previous to their coming within the state. This court will lay hold on any circumstances to secure to them the advantage they have gained. Though we incline to favor creditors as much as we caix, yet they must shew that thev have a superior right to other persons. *287 This being a case between old creditors of a bankrupt, and tbe consignors of tbe goods never paid for or delivered, the defendants have most unquestionably a far superior equity to the complainants, and we will not deprive them of the possession they have obtained. If Howell or his assignees were before the court, they could not get the goods from Searle & Co. without paying for them, and the complainants claiming under him cannot be in a better situation. Upon the whole of this point therefore we are clearly of opinion, that the goods having never been actually delivered to, or in the possession of Howell, the attachment would not lie on them; for the act requires that the goods attached should be the property of the absent debtoi*. I do not think Calvalhall’s case materially different. For though MTver was not the agent by regular power of attorney, yet on the principle that the goods were never actually delivered to, or in the possession of Howell, they must he considered as in transitu, and no more liable to the attachment, not being the property of Howell. Indeed the case of Stokes xs. La Ri-viere strongly favours this opinion; for the property being attached prevented them from being carried to the consignee, by which means they were given up to the Consignor. And the case of Hill us. Miller determined by this court, will also warrant a decree in favor of the defendant MTver.
The Captain, a^cre ditor in pos-^property which was bankrupt’s!*"
TIie CaPfed« tied to com" “‘^ions ^on bills, having funds «i his hands to save him harm-ieSi'
*287 The second point is whether the defendant MTver has a right to retain as creditor in possession to satisfy his demand against Howell ? It cannot be doubted that MTvcr has a preferable lien on such property as was actually Howell’s, as creditor in possession, to satisfy his demand; but to no part of that which belonged to the Madeira merchants, except so far as they may have property of Howell’s in their possession, yet unaccounted for. The attachment act gives him the.preference as creditor In possession.
The third point is respecting commissions. As to the seventy-nine pipes shipped by Searle & Co.' — It appears from their account current, that MTver was considered by them as the shipper. They have made - him debtor *288 for them, and have taken his bills on Howell for the whole amount. The goods seem to be shipped on his credit alone, for he swears that Searle & Co. positively threat-ene(l the wines back and prevent his sailing, inlless he would draw bills. Standing in that point of view, we consider him as the real shipper of forty pipes of WJ'nc’ anc^ therefore not entitled to commissions, being himself personally responsible: nor ought he to he allowed a commission on Calvalhall’s wines. Several merchants were examined, who declared it to be the custom, that where persons endorsed hills, they were entitled to commissions, whether there was a deposit or not, because of. the risque which they run in making themselves personally responsible. In the present Case there was little or r.o risk, for MTver was full handed, having not only all the wines for which he had drawn hills in his own custody, and they too fully insured, but those likewise which belonged to Howell, that had already been paid for.
Mr. Pringle, Mr. Ford, Mr. Read for complainants, Mr. Rutledge, Gen. Pinckney for defendants.
The Captain is not enti-1000/ claimed; he not havmgshewn how he was entitled.
The fourth point. Is MTver entitled to the 1000k (which lie claimed under a special agreement.) We think he is not entitled, because he has not shown what were the objects lie was to perform, or whether he has performed J f ,1 them. It would be very extraordinary to decree him that sum without knowing what wore the services to he done, or if he had performed them in whole or in part, This is a matter resting altogether in his own knowledge; and as he has not thought proper to discover by his answer whether he has done his part, nor brought any evidence to prove it, we must conclude from his silence on the subject, that he has not accomplished the several important objects, and therefore is not entitled to the reward. The wages and other allowances made him may he reasonably presumed a sufficient compensation for his services, merely as Captain of the vessel. The bill of complainants was therefore dismissed.*

See the eases on the right of stopping goods in transitu, collected hi Hooper’s Justinian in the notes, pages 461 to 466. The principal cases are Wisemen vs. Vanderut, 2 Vern. 203. 1 Atk. 216. Cowper *289 296. 1 Henry Blackstone 357, 364. 2 H. Blackstone 211. 2 Term Rep. 63; 674, 3 Do. 119, 464. 5 Do. 683, 6 Do. 20. 7 Do. 65, 441. 8 Do. 330. 1 East Rep. 4, 515. 3 Do. 93, 583. 5 Do. 175. 6 Do. 20. 9 Do. 506. 3 Caine’s New-York Rep. 182. 1 Johnson's N. Y. Rep. 1, 1 in error.